IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **PAUL D. RIPPA** | : | |
| | : | |
| plaintifff, | : | |
| | : | |
| v. | : | **No. 07-250 C** |
| | : | Judge Christine O.C. Miller |
| **THE UNITED STATES** | : | |
| | : | |
| defendant. | : | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Paul D. Rippa hereby moves this Court for Summary Judgment pursuant to Rule 56.

Attached to this Motion are Plaintiff's Proposed Findings of Uncontroverted Facts and a Brief in Support of this Motion. An Appendix containing copies of relevant statutes and regulations and other administrative materials cited in the brief and a Declaration of Plaintiff Rippa have been filed separately.

The Plaintiff respectfully requests an opportunity to present oral argument on this Motion.

Respectfully submitted,

/s/

RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440

Washington, DC 20015
202-274-1812
(202-274-1813 facsimile)
richard@hirnlaw.com

Attorney for Plaintiff

June 26, 2007

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **PAUL D. RIPPA** | : | |
| | : | |
| plaintifff, | : | |
| | : | |
| v. | : | **No. 07-250 C** |
| | : | Judge Christine O.C. Miller |
| **THE UNITED STATES** | : | |
| | : | |
| defendant. | : | |

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

1. On November 6, 2006, Plaintiff Rippa was hired by the BIA as a science teacher in the Wingate High School and became an "educator" within the meaning of §1131(o) of Pub.L. No. 95-561, as amended, (25 U.S.C. § 2012(o)), because he performed "classroom or other instruction . . .on a school year basis principally in a Bureau school." Rippa Decl. ¶ 3.

2. On March 13, 2007, the Acting Principal of Wingate High School gave plaintiff Rippa a memorandum which stated in part:

> This notice is to inform you that you will be separated from your position as Teacher (science) and from Federal service. This action will be effective Friday, March 30, 2007. This action is being taken due to inappropriate interaction with students in the classroom.
>
> This action is being taken during your probationary period. . . .and is therefore, neither grievable nor appealable.

Rippa decl. ¶ 4 and exhibit A attached thereto.

3. Plaintiff Rippa was terminated effective March 30, 2007. Rippa decl. ¶ 6.

4. Plaintiff Rippa was discharged without an opportunity for a hearing to rebut the allegation of "inappropriate interaction with students in the classroom" or any of the procedural protections or due process requirements contained in Department of Interior regulations at 29 C.F.R. § 38.9. Rippa decl. ¶ 5.

Respectfully submitted,

/s/

RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812
(202-274-1813 facsimile)
richard@hirnlaw.com

Attorney for Plaintiff

June 26, 2007

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **PAUL D. RIPPA** | : | |
| | : | |
| plaintifff, | : | |
| | : | |
| v. | : | **No. 07-250 C** |
| | : | Judge Christine O.C. Miller |
| **THE UNITED STATES** | : | |
| | : | |
| defendant. | : | |

**BRIEF IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812
(202-274-1813 facsimile)
richard@hirnlaw.com

Attorney for Plaintiff

## Table of Contents

Table of Cases and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Question Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## Table of Cases and Authorities

*Bhargave v. Cloer*, 355 F.Supp. 1143 (N.D. Ga. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Birdwell v. Hazelwood School District*, 352 F.Supp. 613 (E.D. Mo. 1972) . . . . . . . . . . . 9

*Cochran v. Chidchester School District*, 456 F.Supp. 390 (W.D. Ark. 1978) . . . . . . . . . 9

*Carter v. Acting Billings Area Director, Bureau of Indian Affairs*,
20 IBIA 195 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Maddox v. Clackamas County School District*, 643 P.2d 1253 (Or. 1982) . . . . . . . . . . . . 9

*McCormack v. Maplewood-Richmond Heights School* District, 935 S.W.2d 703,
(Mo. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Morton v. Ruiz*, 415 U.S. 199 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pretty Paint v. Rocky Mount Regional Director, Bureau of Indian Affairs*,
38 IBIA 177 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Valter v. Orchard Farm School*, 541 S.W. 2d 550 (Mo. 1976) . . . . . . . . . . . . . . . . . . . . 9

Section 1131 of the "Education Amendments of 1978," Public Law No. 95-561,
25 U.S.C. § 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

25 C.F.R. § 38.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

25 C.F.R. § 38.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

25 C.F.R. § 38.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 7

53 FED. REG. 37674 (September 27, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Chapter 62 the Bureau of Indian Affairs Manual ("62 BIAM"), section 11.25 . . . . 4**,** 5, 7

O.R.S. § 342.835 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## QUESTION PRESENTED

The personnel statute that governs the employment of educators in schools operated by the Bureau of Indian Affairs states that "***no*** educator may be discharged without notice of the reasons for the discharge and an opportunity for a hearing under procedures that comport with the requirement of due process." 25 U.S.C. § 2012(e)(1)(B) (emphasis added). Does this statute apply to BIA educators who are in their first year of teaching in BIA schools?

## STATEMENT OF THE CASE

The plaintiff, Paul D. Rippa, has nearly 20 years of experience teaching science and mathematics in New Mexico and Arizona public schools. On November 6, 2006 he was hired by the Bureau of Indian Affairs as a science teacher in the Wingate High School in Fort Wingate, New Mexico. Rippa Decl. ¶ 2-3. The Wingate High School is one of 63 schools which the BIA operates on or near Indian reservations for the benefit of Indian children. http://www.oiep.bia.edu/ (last visited June 19, 2007).

BIA educators are exempt from many civil service laws contained in Title 5 of the U.S. Code applicable to other Federal employees. As relevant to this case, Section 1131(a) of the "Education Amendments of 1978," Public Law No. 95-561, November 1, 1978, exempted BIA "education personnel" employed in the BIA schools from those provisions of Title 5 "relating to . . . the appointment, promotion, hours of work and

removal of civil service employees." 25 U.S.C. § 2012(a).[1] This statute covers not only teachers and other professional personnel, but essentially all school employees, including teacher aides, secretaries, bus drivers, custodians and cafeteria workers. "Educator" is defined as an individual employed in an "education position" which is in turn defined to include "support services at, or associated with, the site of the school." 25 U.S.C. § 2012(o)(1),(2).

Although BIA educators are not covered by Chapter 71 of Title 5, (which contains the procedures by which most Federal employees may be terminated as well as their appeal rights), Congress did not leave them without due process protections. Section 1131(e), currently codified at 25 U.S.C. § 2012 (e), reads:

> **Discharge and conditions of employment of educators.**
>
> (1) Regulations
>
> In promulgating regulations to govern the discharge and conditions of employment of educators, the Secretary shall require - -
>
> (A) that procedures shall be established for the rapid and equitable resolution of grievances of educators;

[1] Although the BIA continues to refer to Pub. L. No. 95-561, this is slightly outdated nomenclature. Title X, Part D of the "No Child Left Behind Act of 2001" is the "Native American Education Improvement Act of 2001." The NAEI Act constituted a "general revision of" and made minor changes to that portion of Pub.L.No. 95-561 which governed the terms and conditions of employment for BIA educators. (See Historical and Statutory Notes in 25 U.S.C.A.§ 2012). These provisions were re-codified from 25 U.S.C. § 2011 to 25 U.S.C. § 2012.

(B) that ***no*** educator may be discharged without notice of the reasons for the discharge and an opportunity for a hearing under procedures that comport with the requirement of due process; . . .

(2) Procedures for discharge

(A) Determinations

(i) In general

. . .[T]he supervisor of a Bureau school may discharge (subject to the procedures under paragraph (1)(B)) ***for cause*** (as determined under regulations prescribed by the Secretary) any educator employed in the school.

(Emphasis added)[2].

As required by § 1131(e), the Secretary of the Interior has promulgated regulations delineating the procedural safeguards to which BIA educators are entitled before they are discharged:

(1) The educator to be discharged shall receive a written notice of the proposal, specifying the causes or complaints upon which the proposal is based, not less than 30 calendar days before the discharge. However, this shall not prohibit the exclusion of the individual from the education facility in cases where exclusion is required for the safety of the students or the orderly operation of the facility.

(2) A reasonable time, but not less than 10 calendar days, will be allotted for the individual to make written and/or oral responses to the charge.

---

[2] Relevant portions of § 1131 and various regulations and other administrative materials cited in this brief have been reproduced in a separately bound appendix for the convenience of the Court.

> (3) An opportunity will be afforded the individual to review the material relied upon to support the charge.
>
> (4) Official time, not to exceed eight hours, will be provided to the individual to prepare a response to the charge.
>
> (5) The educator may elect to have a representative . . .
>
> (6) The individual has a right to a final decision made by the appropriate level of supervision.
>
> (7) The individual has a right to appeal the final decision and have the merits of the case reviewed by a Departmental official not previously involved in the case. This right includes entitlement to a hearing upon request under procedures in accordance with the requirements of due process under section 1131(e)(1)(B) of Pub. L. 95-561.

25 C.F.R. § 38.9(d).

However, the BIA has issued a personnel manual that deny these procedural rights to educators who are in a so-called "probationary period" - which is not referred to anywhere in the statute. Section 11.25(B) of Chapter 62 the Bureau of Indian Affairs Manual ("62 BIAM") states that establishes a three school year probationary period, (which has been reduced to 18 months in the 2003 collective bargaining agreement between the BIA and the educators' union, the Indian Educators Federation). Section 11.25(A) of 62 BIAM also provides that such probationary educators may be summarily discharged during the term of his or her annual teaching contract:

> [A] probationary employee may be terminated ay any time during the term of a contract. Termination is accomplished by providing written

> notice to the employee two weeks prior to the effective date of the termination.

Section 11.25(H) denies such probationary employees any opportunity to appeal this decision:

> Termination of a contract during the probationary period for any reason is not grievable or appealable.

On March 13, 2007, the Acting Principal of Wingate High School summarily discharged Mr. Rippa. She gave plaintiff Rippa a memorandum which stated in part:

> This notice is to inform you that you will be separated from your position as Teacher (science) and from Federal service. This action will be effective Friday, March 30, 2007. This action is being taken due to inappropriate interaction with students in the classroom.
>
> This action is being taken during your probationary period. The probationary period is an extension of the examining process during which time a careful review is made of an employee’s character and ability to satisfactorily perform the duties of the position.
>
> As a result of a careful review into your ability to satisfactorily meet the requirements of your position, it is my determination that you have not been able to meet those requirements. Therefore, it has become necessary to terminate your employment as a Teacher (Science) with the Bureau of Indian Education (BIE).
>
> Your probation period began November 6, 2006, and extends eighteen months from that date. This action is being taken during that period, and is therefore, neither grievable nor appealable. . . .
>
> The effective date of your separation is close of business on March 30, 2007.

(See exhibit A attached to Declaration of Paul Rippa.) Mr. Rippa was not provided an explanation of nor an opportunity to rebut the allegation of "inappropriate interaction with students in the classroom" before he was discharged; nor was he provided a hearing to contest these allegations either before or after his discharge, which was effective on March 30, 2007. Rippa Decl. ¶¶ 5-6.

Mr. Rippa (with the backing of the Indian Educators Federation) has brought this action seeking back pay and reinstatement because he was discharged without the due process rights to which he was entitled under § 1131(e) and the Department of Interior regulations implementing that law.

## ARGUMENT

**The BIA violated § 1131(e) and Department of Interior regulations by summarily discharging the plaintiff without providing him an opportunity for a hearing under procedures that comport with the requirement of due process.**

The language of § 1131(e) is unequivocal **-** "***no*** educator may be discharged without notice of the reasons for the discharge and an opportunity for a hearing under procedures that comport with the requirement of due process." The definition of "educator" in both the statute and in Interior Department regulations includes Mr. Rippa and every other school employee regardless of length of service. 25 U.S.C. § 2012(o)(1),(2); 25 C.F.R. § 38.3. The statute does not create nor even mention a "probationary" period.

The Interior Department regulations does define "probationary period" as "the extension of the appointed [*sic*] process during which a person's character and ability to satisfactorily meet the requirements of the position are reviewed." 25 C.F.R. § 38.3. However, the Interior Department regulations do not exempt educators who are serving such a probationary period from the panoply of due process protections before they are discharged. 25 C.F.R. § 38.9. Rather, the Interior Department regulations distinguish between those educators who have completed their probationary period and those who have not when it comes to the decision not to renew their teaching contract for successive school years. Those educators who have completed the probationary period may appeal the decision not to renew their teaching contract for a successive school year; probationary educators may not. 25 C.F.R. § 38.8. Such contract renewal or non-renewal decisions are distinguished from "discharge," which is defined as "the separation of an employee during the term of the contract" (25 C.F.R. § 38.3) and which is covered by a separate section of the Interior Department regulations. 25 C.F.R. § 38.9. Mr. Rippa was separated on March 30, during the term of his contract for the 2006-07 school year, and therefore he was "discharged" within the meaning of the regulations.

Chapter 62 of the Bureau of Indian Affairs Manual cannot override Mr. Rippa's statutory and regulatory due process rights. Unlike the BIAM, the Interior Department regulations were formally promulgated through the notice and comment procedures of the Administrative Procedures Act by publication in the Federal Register and in the Code of Federation Regulations. 53 FED. REG. 37674 (September 27, 1988). In contrast, the

Supreme Court has explained the BIAM is "solely an internal-operations brochure," *Morton v. Ruiz*, 415 U.S. 199, 235 (1974), and does not have the force and effect of law. For the BIAM "to be a 'real legislative rule,' itself endowed with the force of law, it should be published in the Federal Register." *Id.* The Interior Department's own Board of Indian Appeals[3] has recently and repeatedly admonished the BIA for attempting to subvert the law through the BIAM:

> The Board has discussed the persistent BIA practice of attempting to amend regulations through unpublished documents, particularly the Bureau of Indian Affairs Manual (BIAM), but also including internal policy memoranda. It has consistently held that pronouncements made in these unpublished documents are not regulations, do not have the force and effect of law, and cannot be applied against any party other than BIA (as their author). *See, e.g., Village of Ruidoso, New Mexico v. Albuquerque Area Director,* 32 IBIA 130, 134-38 (1998) (internal BIA guidelines found inapplicable to case, authority and effect not discussed; "checklist" setting out internal BIA procedures applied against BIA); *Village of Ruidoso, New Mexico v. Albuquerque Area Director*, 31 IBIA 143, 151 (1997) (new standard announced in BIA's brief to the Board not applied); *Robles v. Sacramento Area Director*, 23 IBIA 276, 278 (1993), and cases cited there (additional requirements set out in the BIAM not applied); *Allen v. Navajo Area Director*, 10 IBIA 146, 163-65 (1982) (eligibility standard published only in the BIAM not applied). *See also Morton v. Ruiz,* 415 U.S. 199, 232-35 (1974). Because they are unpublished, many, if not most, of these documents are not available to the public.

---

[3] The Board decides finally for the Department appeals to the head of the Department pertaining to certain Administrative actions of officials of the Bureau of Indian Affairs and Orders and decisions of Administrative Law Judges in Indian probate matters other than those involving estates of the Five Civilized Tribes of Indians. The Board also decides such other matters pertaining to Indians as are referred to it by the Secretary, the Director of the Office of Hearings and Appeals, or the Assistant Secretary-Indian Affairs for exercise of review authority of the Secretary. 43 C.F.R. § 4.1

> The Board again disapproves the use of an unpublished internal policy memorandum as a method of amending a regulation. If BIA wishes to amend 25 C.F.R. S 115.601(b)(1) as set out in the November 2001 memorandum, it must do so through an appropriate rulemaking proceeding, or through some other method recognized as acceptable public notice by the Administrative Procedure Act.

*Pretty Paint v. Rocky Mount Regional Director, Bureau of Indian Affairs*, 38 IBIA 177, 180 (2002). "The BIAM is an internal operating manual . . . Provisions contained only in the BIAM are without the force of law when sought to be applied to parties outside the BIA." *Carter v. Acting Billings Area Director, Bureau of Indian Affairs,* 20 IBIA 195, 203 (1991).[4]

Finally, there is nothing extraordinary about entitling probationary educators to protection against termination without cause during the term of his or her teaching contract. Even probationary teachers have a constitutionally protected "property interest" in their continued employment, which may only be vitiated with due process, until the term of their contract expires. *McCormack v. Maplewood-Richmond Heights School* District, 935 S.W.2d 703, 708 (Mo. 1996); *Maddox v. Clackamas County School District,* 643 P.2d 1253, 1255 (Or. 1982); *Cochran v. Chidchester School District,* 456 F.Supp. 390, 394 (W.D. Ark. 1978); *Valter v. Orchard Farm School,* 541 S.W. 2d 550, 556-57 ( Mo. 1976); *Bhargave v. Cloer*, 355 F.Supp. 1143, 1145 (N.D. Ga. 1972); *Birdwell v. Hazelwood School District*, 352 F.Supp. 613, 622-23 (E.D. Mo. 1972).

---

[4] "On the other hand, provisions of the BIAM may be enforced against the BIA." *Id.*

Congress simply codified this due process right when it created a system under which BIA educators would be given annual contracts. States have also enacted similar statutory protections for probationary educators. *Eg.*, O.R.S. § 342.835.

**CONCLUSION**

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment should be granted, and he should be reinstated to his teaching position with back pay.

Respectfully submitted,

/s/

RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812 (202-274-1813 facsimile)
richard@hirnlaw.com

June 26, 2007