IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **PAUL D. RIPPA** | : | |
| | : | |
| plaintifff, | : | |
| | : | |
| v. | : | **No. 07-250 C** |
| | : | Judge Christine O.C. Miller |
| **THE UNITED STATES** | : | |
| | : | |
| defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE MOTION TO DISMISS**

Paul Rippa was employed by the Department of the Interior as a science teacher in a BIA school during the 2006-2007 school year. Complaint ¶ 5. He was employed under a unique personnel statute applicable only to BIA educators - Section 1131 of the "Education Amendments of 1978," Pub. L. No. 95-561, currently codified at 25 U.S.C. § 2012. This statute exempts BIA "education personnel" from those provisions of Title 5 "relating to classification, pay and leave . . . and . . . the appointment, promotion, hours of work and removal of civil service employees." 25 U.S.C. § 2012(a). The statute establishes a comprehensive employment scheme for BIA educators that involves the use of school year-long teaching contracts as are common-place in public school systems around the country. The statute sets compensations levels and provides for leave. Although the statute exempts BIA educators from Chapter 71 of Title 5, (that portion of the Civil Service Reform Act which contains the procedures by which most Federal

employees may be terminated as well as their appeal rights)[1], the statute provides that BIA educators may only be discharged "for cause" and "that ***no*** educator may be discharged without notice of the reasons for the discharge and an opportunity for a hearing under procedures that comport with the requirement of due process. . ." 25 U.S.C. § 2012(e)(emphasis added).

Mr. Rippa was summarily discharged in March, 2007 before the end of the school year and the end of his teaching contract. Complaint ¶¶ 7-8. He was not provided "notice of the reasons for the discharge and an opportunity for a hearing" to contest the reason for his discharge, despite the clear language of § 2012(e). Complaint ¶ 11. The gravamen of the dispute is whether the BIA may establish a "probationary" period and deny such statutory due process to educators during their first few years of employment even though the statute does not mention "probationary" periods and clearly provides that ***no*** educator may be discharged without notice and an opportunity for a hearing.

Mr. Rippa has brought this suit to recover the remainder of his salary for the term of the 2006-2007 school year and contract term.[2] "Where it is found that an adverse

---

[1] The MSPB does not have jurisdiction over appeals from discharged BIA educators. MSPB. *Rivard v. Dep't of Interior,* 30 M.S.P.R. 311 (1986).

[2] As part of the relief, Mr. Rippa may also be entitled to a contract for the 2007-2008 school year and the salary attendant thereto because the statute also provides "that each educator employed in a Bureau school be notified 30 days prior to the end of an academic year whether the employment contract of the individual will be renewed for the following year." 25 U.S.C. § 2012(e)(1)( C ). Because of his premature and illegal discharge, Mr. Rippa was not notified that he contract was not being renewed by the statutory deadline.

personnel action has been carried out in substantial violation of procedural regulation, it is a void action and the employee is entitled to recover any pay of which he has been illegally deprived." *Gratehouse v. United States*, 206 Ct. Cl. 288, 512 F.2d 1104, 1108 (Ct. Cl. 1975).

The Court has jurisdiction over Mr. Rippa's Tucker Act claim because the statute on which he relies and which he alleges to have been violated, and the Department of Interior regulations implementing that statute, on their face, mandate compensation and are therefore "money mandating."

Section 1131(g), codified at 25 U.S.C. § 2012(g), entitles BIA educators to specific salary amounts. In relevant part, it reads:

> **(g) Compensation or annual salary**
>
> (1) In general . . .
>
> (B) Compensation or salary for teachers and counselors
>
> (i) In general: The Secretary shall establish the rate of compensation, or annual salary rate, for the positions of teachers and counselors (including dormitory counselors and home-living counselors) at the rate of compensation applicable (on January 8, 2002, and thereafter) for comparable positions in the overseas schools under the Defense Department Overseas Teachers Pay and Personnel Practices Act [20 U.S.C. 901 et seq.].

Section 1131(b), codified at 25 U.S.C. § 2012(g), also provides that:

the Secretary shall prescribe regulations to carry out this section. Such regulations shall provide for--

* * *

(3) the fixing of basic compensation for educators and education positions;

* * *

(6) the entitlement of educators to compensation;"

The Secretary of the Interior has promulgated regulations entitling BIA educators to compensation which read in part:

**§ 38.6 Basic compensation for educators and education positions.**

(c) Schedule of compensation rates for teachers and counselors. The basic compensation for teachers and counselors, including dormitory counselors and homeliving counselors, shall be determined in accordance with rates set by the Defense Department Overseas Teachers Pay and Personnel Practices Act. The schedule used shall be the current published schedule for the school year beginning on or after July 1 of each year.

* * *

(f) Payment of compensation to educators. This section applies to those individuals employed under the provisions of Section 1131(m) of Pub.L. 95-561 or Title 5 U.S.C.

(1) Pay periods. Educators shall be paid on the basis of a biweekly pay period during the term of the contract. Chapter 55 of Title 5 U.S.C. applies to the administration of pay for educators, except that section 1131(m) of Pub.L. 95-561 provides that 5 U.S.C. 5533 does not apply with respect to the receipt of pay by educators during summer recess under certain circumstances.

> (2) Pay for contract educators. When an educator is appointed, payment under the contract is to begin as of the effective date of the contract. If an educator resigns or is discharged before the expiration of the term of the contract, pay ceases as of the date of resignation or discharge.

25 C.F.R § 38.6. Inasmuch as Mr. Rippa was not discharged in accordance with the procedures provided for in § 1131, he is still entitled to be paid his salary.

These specific statutory and regulatory provisions which entitle Mr. Rippa to compensation distinguish Mr. Rippa's claim from that of the plaintiff in *Grosdidier v. United States*, 77 Fed. Cl. 106 (2007), on which the Defendant so heavily relies in its motion. In *Grosdidier*, the plaintiff alleged that the Broadcasting Board of Governors violated 22 U.S.C. § 1474, which permits the Board to hire aliens only if no qualified citizens apply for the job. This Court held that § 1474 was not a money mandating statute because it did not provide for compensation, only limitations on who could be hired. As the Court noted that the statute on its face did not mandate the payment of compensation or money, and that "Plaintiff concedes that the statute does not mandate the payment of monetary damages on its face." 77 Fed. Cl. at 109. The Court held that there was no Tucker Act jurisdiction "[b]ecause 22 U.S.C. § 1474(1) is not facially money-mandating." *id.* However, § 1131 of Pub. L. No. 95-561, and the regulations implementing it, *on their face*, mandate the payment of compensation to BIA educators for at least the term of their contract unless they are discharged in accordance with the procedures contained therein.[3]

---

[3] Even if § 1131 was not "money mandating" on its face, "jurisdiction exists under the Tucker Act as long as there is a 'fair inference' that a statute is money-mandating."

Another important distinction between *Grosdidier* and Mr. Rippa's claim is that the Ms. Grosdidier was never actually appointed to the position whose salary she claimed. As the Court noted, it "cannot grant monetary relief for the loss of a position to which a federal employee has not be appointed." 77 Fed. Cl. at 110 n.7 *quoting Westover v. United States*, 71 Fed. Cl. 635, 640 (2006).

It is also important to remember that "the Supreme Court held that a statute does not have to explicitly provide for monetary damages in order to be money-mandating." 77 Fed. Cl. at 110, *citing White Mountain Apache Tribe*, 537 U.S. at 475. In fact, with the exception of several FLSA cases, the Plaintiff is unaware of any money claim brought by Federal employees under the Tucker Act that was based on a statute that specifically provided for "damages" *per se* as opposed to simply mandating the payment of money. "[J]urisdiction may be found in this court in cases . . . where a provision of law expressly grants the plaintiff a right to a sum certain. . . In this category of case, the law or regulation relied upon must command the United States to pay the requested money." *Hirschman v. United States*, 11 Cl.Ct. 338, 340 (1986), *citing Eastport Steamship Corp. v. United States*, 178 Cl. Ct. 599, 605, 607, 372 F.2d 1002, 1007-08 (1967). For example,

---

*Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006), *citing United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003). Tucker Act jurisdiction exists when a statute is "reasonably amendable" to a reading which gives the plaintiff a right to money damages. 537 U.S. at 469-70. Even if the statute at issue is not itself money-mandating, regulations implementing the statute become money-mandating if they create entitlement to payment when certain conditions are met. *Contreras v. United States*, 64 Fed. Cl. 583, 598 (Fed. Cir. 2005).

this Court has found Tucker Act jurisdiction for claims by Weather Service employees for payment of night differential and Sunday and Holiday premium pay, even though the underlying statute did not explicitly provide for "damages." *Gahagan v. United States*, 19 Cl.Ct. 168, 172 (1989). The Federal Circuit held that this Court had Tucker Act jurisdiction over a claim by a DEA employee for moving expenses under 5 U.S.C. § 5724, which simply reads: "Under such regulations as the President may prescribe and when the head of the agency concerned or his designee authorizes or approves, the agency shall pay from Government funds [certain travel and transportation expenses]." *McClary v. United States*, 775 F.2d 280 (Fed. Cir. 1985). This Court found that a statute which provides for payment of administratively uncontrollable overtime was a money-mandating statute in *Hannon v. United States*, 29 Fed. Cl. 142 (1993). The Court of Appeals also identified the Federal Employees Flexible and Compressed Work Schedules Act, 5 U.S.C. § 6120-6133 (1994), as an independent, money-mandating statute to support the employee's back pay claim. *Worthington v. United States*, 168 F.3d 24, 26-27 (Fed.Cir.), *reh'g denied* (1999). None of the statutes at issue in these cases specifically provided for a remedy of damages. The fact that each provided for payment of compensation or benefits in the first instance was sufficient.

This Court has Tucker Act jurisdiction over claims for back pay and allowances filed by claimants improperly released from active duty in the military because they had a statutory right to pay and allowances while on active duty. *Eg. Adkins v. United States*, 68

F.3d 1217, 1321 (Fed. Cir. 1995), *reh'g denied* (1996); *Haselrig v. United States*, 53 Fed. Cl. 111 (2002).

## Conclusion

The Defendant is correct that the violation of a statute or regulation relating to federal employment does not automatically create a cause of action for money damages. However, § 1131 of Pub.L. No. 95-561 and 25 C.F.R. Part 38 are a quintessential money-mandating statute and regulation because they mandate, on their face, the payment of compensation. Therefore, the Court has Tucker Act jurisdiction over Mr. Rippa's claim and the Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

/s/

RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812 (202-274-1813 facsimile)
richard@hirnlaw.com

Attorney for Plaintiff

August 10, 2007