**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **PAUL D. RIPPA** | : | |
| | : | |
| plaintifff, | : | |
| | : | |
| v. | : | **No. 07-250 C** |
| | : | Judge Christine O.C. Miller |
| **THE UNITED STATES** | : | |
| | : | |
| defendant. | : | |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT'S MOTION TO DISMISS**

RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812
(202-274-1813 facsimile)
richard@hirnlaw.com

Attorney for Plaintiff

## Table of Contents

Table of Cases and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. *Volk v. Hobson* is no longer good law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Although BIA educators are excluded from coverage of the Civil Service Reform Act, they have a statutory right to appeal their discharges and therefore *United States v. Fausto* is inapplicable. . . . . . . . . . . . . . . . . . . . . 4

III. The Contract Disputes Act is not applicable to this case; Mr. Rippa is seeking to enforce statutory rather than contractual rights. . . . . . . . . . . . . 8

a. *Flying House* did not hold that a BIA educator's only course of remedy is the Contract Disputes Act. Therefore, Mr. Rippa's failure to file a claim under the CDA does not bar him from bringing a claim under § 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

b. Mr. Rippa was a Federal employee, not a contractor. . . . . . . . . . . 10

c. Enforcement through the Contract Disputes Act would be futile because the terms of Mr. Rippa's contract conflict with the statutory provision which Mr. Rippa seeks to enforce in this case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Appendix: Standard Form 50 Appointment Document . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Table of Cases and Authorities**

*Bosco v. United States*, 976 F.2d 710, 714 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 7

*Bureau of Indian Affairs, Isleta Elementary School, Pueblo of Isleta and Indian Educators Federation*, 54 FLRA 1428 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bureau of Indian Affairs, Office of Indian Education Programs, Crystal Boarding School, Navajo, NM and Indian Educators Federation, Local 4524, American Federation of Teachers, AFL-CIO*, (Axon, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Carter v. Gibbs*, 909 F.2d 1452 (Fed. Cir.) *cert. denied*, 498 U.S. 811 (1990) . . . . . . . 2, 3

*Contreras v. United States*, 64 Fed. Cl. 583, 598 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Flying Horse v. United States*, 49 Fed. Cl. 419 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Goutos v. United States*, 552 F.2d 922, 924, 212 Ct. Cl. 95 (1976) . . . . . . . . . . . . . . . . 10

*Hamlet v. United States*, 873 F.2d 1414, 1417 n. 5 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . 10

*Horner v. Acosta*, 803 F.2d 687 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Indian Educators Federation, New Mexico Federation of Teachers and U.S. Dep't of the Interior, Bureau of Indian Affairs, Albuquerque and Navajo Areas*, 53 FLRA 969 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lee v. Evans*, 31 Fed.Appx. 680, 2002 WL 243413 (Fed. Cir. 2002) . . . . . . . . . . . . . . . 11

*Mudge v. United States*, 308 F.3d 1220 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Romero v. United States*, 38 F.3d 1204, 1210-11 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . 8

*Skalafuris v. United States*, 683 F.2d 383, 387 and n. 15, 231 Ct. Cl. 173 (1982) . . . . . 10

*Scholl v. United States*, 61 Fed. Cl. 322, 325 (2004), *motion to certify appeal denied*, 68 Fed. Cl. 58 (2005), *mandamas granted by In re United States*, 463 F.3d 1328 (Fed. Cir. 2006), *rehearing and rehearing en banc denied* (Dec. 8, 2006), *petition for cert. filed*, 75 USLW 3585 (March 7, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Fausto*, 484 U.S. 439 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*U.S. Dep't of the Interior, Bureau of Indian Affairs, Gallup, NM and Indian Educators Federation, New Mexico Federation of Teachers*, 52 FLRA 1442 (1997) . . . . . . . . . . . 13

*Volk v. Hobson*, 866 F.2d 1398 (Fed. Cir.), *cert. denied* 490 U.S. 1092 (1989) . . . 1, 2, 3

*Worthington v. United States* 168 F.3d 24 Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Zervas v. United States*, 26 Cl. Ct. 1425, 1427 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Due Process Amendments, Pub.L. No. 101-376, 104 Stat 461 (1990). . . . . . . . . . . . . . . . . 5

Federal Service Labor Management Relations Statute, 5 U.S.C. § 7101 et seq. . . 2, 4, 13

Pub.L. No. 103-424, §9(b), 108 Stat. 4361 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

25 U.S.C. § 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 9, 11, 12, 14

25 C.F.R. Part 38. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6, 10, 14

Federal Acquisition Regulations, 48 C.F.R. §§ 33.215, 52.233-1 . . . . . . . . . . . . . . . . . . 11

Va. Code Ann.§ 22.1-302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

24 P.S. §11-1121. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## INTRODUCTION

The arguments made in the defendant's reply brief are internally contradictory. The defendant first claims that Congress exempted BIA educators from the protections of the Civil Service Reform Act and therefore did not intend for them to have any recourse if discharged; then the defendant argues that the plaintiff has a right to bring suit under the Contract Disputes Act to challenge his termination. As will be explained herein, neither contention is correct.

First, the Federal Circuit's decision in *Volk v. Hobson*, 866 F.2d 1398 (Fed. Cir.), *cert. denied* 490 U.S. 1092 (1989), which held that a discharged BIA educator's only remedy was under the negotiated grievance procedure, is no longer good law because Congress subsequently amended the Federal Service Labor-Management Relations Statute to modify the exclusivity provision contained therein. Second, plaintiff will explain that the Supreme Court's decision in *United States v. Fausto*, 484 U.S. 439 (1988), is inapplicable because Mr. Fausto and other Federal employees like him had *no* statutory right to challenge their discharge in *any* forum. In contrast, Congress has specifically provided by statute that Mr. Rippa and other BIA educators shall be entitled to a due process hearing to challenge their discharge. Third, the plaintiff will demonstrate that he and other BIA educators are Federal employees, and not independent contractors, and therefore the Contract Disputes Act does not apply.

## I. *Volk v. Hobson* is no longer good law.

In *Volk v. Hobson* the plaintiff brought a claim for back pay because she, like plaintiff Rippa, was denied a due process hearing provided for in the special personnel statute which governs the employment of BIA educators. The Court of Appeals dismissed her claim because it determined that her exclusive remedy was contained in the grievance and arbitration procedures negotiated between the BIA and her union under the Federal Service Labor Management Relations Statute, 5 U.S.C. § 7121. The due process hearing procedures set for in 25 U.S.C. § 2011 (now § 2012) and in the Interior Department regulations:

> . . . were superseded by those set out in the collective bargaining agreement negotiated between the BIA and the NCBIAE [union] as permitted by 5 U.S.C. § 7121, and which apply to Volk. Nothing suggests Congress intended BIA educators to have statutory remedies in addition to the negotiated procedures. To the contrary, section 7121(a)(1) says that "the procedures [provided in the collective bargaining agreement] shall be the exclusive procedures for resolving grievances which fall within its coverage."

866 F.2d at 1401. The Court of Appeals relied on *Volk v. Hobson* when it later ruled in *Carter v. Gibbs,* 909 F.2d 1452 (Fed. Cir.) *cert. denied*, 498 U.S. 811 (1990), that grievance and arbitration procedures negotiated pursuant to 5 U.S.C. § 7121 were the exclusive mechanism for *all* Federal employee pay claims which were once brought in this Court. Quoting *Volk*, the Federal Circuit wrote in *Carter v. Gibbs* that "courts

'should abstain completely from inventing other remedies when Congress has set up a complete, integrated statutory scheme." 909 F2d at 1456.

However, *Carter v. Gibbs* and with it *Volk v. Hobson* were overruled by statute. *Mudge v. United States*, 308 F.3d 1220 (Fed. Cir. 2002). In Pub.L. No. 103-424, §9(b), 108 Stat. 4361 (1994), Congress amended 5 U.S.C. § 7121(a), by adding the word "administrative" in the clause previously construed in *Volk* and *Carter*, which had stated that the negotiated grievance procedures "shall be the exclusive procedures for resolving grievances which fall within its coverage." The language of § 7121(a) now states that negotiated grievance procedures are only the "exclusive *administrative* procedures" for resolving complaints of unionized Federal employees. This 1994 amendment *reopened* this Court's doors to Tucker Act claims brought by unionized Federal employees who seek damages under "money-mandating" statutes and regulations. [1]"[W]e interpret amended § 7121(a)(1) according to its unambiguous language and conclude that the

[1] As explained more fully in plaintiff's earlier brief in opposition to the motion to dismiss (at pages 6-7), the defendant's contention that the statute on which Mr. Rippa brings his Tucker Act claim must explicitly provide for a private cause of action is simply wrong. So long as the statute on which plaintiff relies "money-mandating," or can be fairly construed as such, this Court has jurisdiction over a claim for lost wages or monetary benefits. In fact, the Tucker Act provides jurisdiction over claims for violations of money-mandating regulations, (*e.g., Contreras v. United States*, 64 Fed. Cl. 583, 598 (2005), and obviously Federal regulations do not contain an express provision for a "private cause of action." With the exception of several FLSA cases, the plaintiff is unaware of any money claim brought by Federal employees under the Tucker Act that was based on a statute that specifically provided for "damages" *per se* as opposed to simply mandating the payment of money. The defendant has cited no authority for its restrictive reading of Tucker Act jurisdiction.

subsection no longer restricts a federal employee's right to pursue an employment grievance in court." *Mudge*, 308 F.3d at 1220.

Furthermore, Mr. Rippa's claim would *not* have been barred even if § 7121(a) had not been amended, because, unlike Ms. Volk, his complaint does not "fall within [the] coverage" of the grievance procedure in the current BIA collective bargaining agreement, which was a predicate to exclusivity in § 7121(a)(1). Last year, an arbitrator held that the grievance procedure contained in the 2003 collective bargaining agreement negotiated between the BIA and the union which currently represents BIA educators expressly excludes from its coverage those grievances filed by BIA educators challenging a "termination during probationary period." *Bureau of Indian Affairs, Office of Indian Education Programs, Crystal Boarding School, Navajo, NM and Indian Educators Federation, Local 4524, American Federation of Teachers, AFL-CIO,* (Axon, 2006).

## II. Although BIA educators are excluded from coverage of the Civil Service Reform Act, they have a statutory right to appeal their discharges and therefore *United States v. Fausto* is inapplicable.

In *United States v. Fausto*, 484 U.S. 439 (1988), the Supreme Court stated that a court could not offer a judicial remedy to non-preference eligible excepted service employees because Congress intended that may be suspended or discharged at will. As the defendant notes in its reply brief at 3, "Mr. Fausto was a Federal employee excluded from the administrative and judicial review procedures afforded certain other categories

of Federal employees" and therefore there was a "'considered congressional judgment' that the plaintiff was not entitled to any judicial relief."[2] In contrast, Congress has *not* statutorily excluded BIA educators from procedures under which they may challenge their discharge. Although BIA educators are excluded from those provisions of Title 5 "relating to the . . .removal of civil service employees," (i.e., Chapter 75 of the Civil Service Reform Act), Congress did not leave BIA educators without a right to appeal or review their discharges. Congress required that the Interior Secretary promulgate regulations "to govern the discharge and conditions of employment of educators" and mandated that these procedures, at a minimum, provide that "no educator may be discharged without notice of the reasons for the discharge and an opportunity for a hearing under procedures that comport with the requirements of due process." 25 U.S.C. § 2012(e)(1). As required by § 2012(e), the Secretary of the Interior has promulgated regulations delineating the procedural safeguards and appeal rights to which BIA educators are entitled before they are discharged:

> (1) The educator to be discharged shall receive a written notice of the proposal, specifying the causes or complaints upon which the proposal is based, not less than 30 calendar days before the discharge. However, this shall not prohibit the exclusion of the individual from the education facility in cases where exclusion is required for the safety of the students or the orderly operation of the facility.

[2] Since *Fausto* was decided, the CSRA has been amended to provide nonpreference eligible members of the excepted service with administrative and judicial review of their discharges. *See* Due Process Amendments, Pub.L. No. 101-376, 104 Stat 461 (1990).

> (2) A reasonable time, but not less than 10 calendar days, will be allotted for the individual to make written and/or oral responses to the charge.
>
> (3) An opportunity will be afforded the individual to review the material relied upon to support the charge.
>
> (4) Official time, not to exceed eight hours, will be provided to the individual to prepare a response to the charge.
>
> (5) The educator may elect to have a representative . . .
>
> (6) The individual has a right to a final decision made by the appropriate level of supervision.
>
> (7) The individual has a right to appeal the final decision and have the merits of the case reviewed by a Departmental official not previously involved in the case. This right includes entitlement to a hearing upon request under procedures in accordance with the requirements of due process under section 1131(e)(1)(B) of Pub. L. 95-561.

25 C.F.R. § 38.9(d).

In *Fausto,* the Supreme Court held that judicial review would subvert the carefully constructed statutory scheme in which Congress intended to leave non-preference eligible excepted service employees without any redress if discharged. However, when Congress enacted the unique personnel statute governing the employment of BIA educators, it mandated that *all* educators (including those which the BIA has characterized as "probationary" without any legislative authority to do so) be given due process appeal rights. This Court would be effectuating Congressional intent, rather than subverting it, by allowing a Tucker Act claim to be brought when those statutory rights are denied.

Further, if this Court holds that BIA educators have no judicial remedy when they are denied the due process hearing mandated by Congress, the BIA would be free to ignore this statutory requirement with impunity. *Cf. Bosco v. United States*, 976 F.2d 710, 714 (Fed. Cir. 1992)(refusing to apply *Fausto* to preclude Tucker Act suit to enforce rights under Prevailing Rate Act because it would render act "largely, if not totally, superfluous as unenforceable.").

Although the Court of Appeals would later determine that the Court of Federal Claims lacked jurisdiction on a different basis, this Court held that *Fausto* did not preclude a former bankruptcy judge from bringing a Tucker Act claim for reappointment because "[a] statutory scheme separate from the CSRA governs the appointment, reappointment and removal of bankruptcy judges." *Scholl v. United States*, 61 Fed. Cl. 322, 325 (2004), *motion to certify appeal denied*, 68 Fed. Cl. 58 (2005), *mandamas granted by In re United States*, 463 F.3d 1328 (Fed. Cir. 2006), *rehearing and rehearing en banc denied* (Dec. 8, 2006), *petition for cert. filed*, 75 USLW 3585 (March 7, 2007). Similarly, Congress has enacted a separate statutory scheme which governs the appointment and removal of BIA educators. Although the Court of Appeals ultimately held that the Court of Federal Claims did not have jurisdiction over Judge Scholl's claim for reappointment following the end of his initial term because he was not discharged, it did find that the statute governing the appointment of bankruptcy judges "clearly is a money-mandating statute" that would form the basis of a Tucker Act claim had Judge School been discharged, because it mandated "compensation for his services" at a

particular rate. 465 F.3d at 1334. Similarly, 25 U.S.C. § 2012 is also a "money-mandating" statute which can form the basis of Tucker Act jurisdiction because it sets the annual salary rates for teachers and other BIA educators. 25 U.S.C. § 2012(g).

This Court and the Federal Circuit have repeatedly rejected the government's attempts to apply *Fausto* beyond its original context. *Eg., Bosco, supra; Worthington v. United States* 168 F.3d 24 Fed. Cir. 1999)(claim for lost wages under Flexible and Compressed Work Schedule Act); *Romero v. United States*, 38 F.3d 1204, 1210-11 (Fed. Cir. 1994)(claim for pay withheld from Federal employees); *Zervas v. United States*, 26 Cl. Ct. 1425, 1427 (1992)(claim for grade and pay retention benefits and living quarters allowance). Further, in none of these cases did the pay statute on which the employee based their Tucker Act claim contain a so-called "private right of action."

## III. The Contract Disputes Act is not applicable to this case; Mr. Rippa is seeking to enforce statutory rather than contractual rights.

The defendant's contention that "Mr. Rippa's employment does not arise from the statutes he cites in his complaint, but rather from a contract that he entered into with the BIA" (Def. Reply at 4) is simply incorrect. Mr. Rippa was appointed to the civil service under the authority of the personnel statute governing BIA educators, which clearly states that he is an "employee." To the extent that *Flying Horse v. United States*, 49 Fed. Cl. 419 (2001), held that BIA educators are contractors rather than Federal employees, it was incorrectly decided. Furthermore, even if Mr. Rippa has rights under the Contract

Disputes Act, he also has separate statutory rights which may also been enforced independently of his contractual rights.

**a. *Flying House* did not hold that a BIA educator's only course of remedy is the Contract Disputes Act. Therefore, Mr. Rippa's failure to file a claim under the CDA does not bar him from bringing a claim under § 2012.**

This Court did *not* hold in *Flying Horse* that the Contract Disputes Act is the *exclusive* avenue of redress for BIA educators. Rather, it held that the plaintiffs had a right to bring an action under the Contract Disputes Act, and specifically held the possibility open that BIA educators may have other avenues of recovery. "Plaintiffs did not file their amended complaint in is court under either 62 BIAM 11 or 25 U.S.C. § 2012, but the CDA, and this is an important distinction." 49 Fed. Cl. at 430. The Court held that neither the BIA's personnel manual "nor § 2012 specifically state that they take precedence over the [Contract Disputes Act] in a contractual dispute context." *Id* at 431. The Court did not, however, hold that the Contract Disputes Act superceded § 2012 or was the exclusive avenue of relief. (The Court did correctly note that the "plaintiffs simply are not covered by the procedural framework of the CSRA [Civil Service Reform Act]," *(id.* at 430), which further supports Mr. Rippa's argument that *Fausto* is inapplicable).

**b. Mr. Rippa was a Federal employee, not a contractor.**

The defendant's claim that "Mr. Rippa's employment does not arise from the statutes he cites in his complaint" is contrary to the facts. Reproduced as an exhibit at the

end of this memorandum is a copy of the Standard Form 50 appointment document, "Notification of Personnel Action," issued to Mr. Rippa when he began his employment with the BIA. As indicated in block 5-B, he received an "EXC APPT" (that is, an appointment to the excepted service). The legal authority for that appointment, as shown in block 5(D), is "P.L. 95-561" - the statute he cites as the basis of his complaint, and which is now codified at 25 U.S.C. § 2012. Furthermore, the statute repeatedly refers to BIA educators as "employees" and their relationship to the BIA as "employment." (*i.e.* § 20012(e) "Discharge and *conditions of employment* of educators.")

This SF-50 appointment document is the *"sine qua non* of plaintiff's appointment" to the civil service. *Goutos v. United States*, 552 F.2d 922, 924, 212 Ct. Cl. 95 (1976); *accord Skalafuris v. United States*, 683 F.2d 383, 387 and n. 15, 231 Ct. Cl. 173 (1982)(emphasizing the importance of the SF-50 in determining existence of appointment to the civil service). If Mr. Rippa's "employment was by 'appointment,' a breach of contract action against the government would be precluded." *Hamlet v. United States*, 873 F.2d 1414, 1417 n. 5 (Fed. Cir. 1989). Interior Department regulations clearly characterizes the hiring of BIA educators as an "appointment." *see* 25 C.F.R. § 38.7, ("Appointment of educators").

The Federal Acquisition Regulations require that all contracts that are subject to the Contract Disputes Act contain a clause clearly specifying that "this contract is subject to the Contract Disputes Act of 1978" and that "all disputes arising or relating to this contract shall be resolved under this clause." This "Disputes Clause" must also contain

explicit language, set out in the FARs, setting for the procedure for filing a claim under the CDA. 48 C.F.R. § 52.233-1; 48 C.F.R. § 33.215. The teaching contract issued to Mr. Rippa does not contain this "Disputes Clause." (See exhibit 1 attached to Defendant's Reply Brief). The absence of this "Disputes Clause" is an indication that Mr. Rippa was appointed under the civil service laws rather than by personal service contract covered by the CDA. *Cf.*, *Lee v. Evans*, 31 Fed.Appx. 680, 2002 WL 243413 (Fed. Cir. 2002).

Furthermore, there is simply no designated "contracting officer" to whom Mr. Rippa can submit his claim, since the teaching contracts are not treated by the BIA as procurement matters. BIA educators "shall be hired by the supervisor of the school." 25 U.S.C. § 2012(d)(1)(A)(i)(I). It is the school principal, and not a contract officer, who issues the educator the teaching contract.

If Mr. Rippa's employment was subject to the Contract Disputes Act, he, and the 5,000 other employees of the BIA schools, would have up to six years to file a claim over a discharge. Further, it would permit each of the 5,000 educators in the BIA schools to litigate, under the Contract Disputes Act, virtually any workplace dispute or complaint, such as a claim that the work they are being assigned is inconsistent with what they were contracted to do, or that the compensation is inadequate for such assignments. *Could Congress have intended that? (Has the defendant really thought through the implications of its argument?).*

The defendant has misconstrued the significance of the annual teaching contract given BIA educators. Virtually every public school teacher in America is given an annual

teaching contract to sign. *e.g.,* Va. Code Ann.§ 22.1-302; 24 P.S. §11-1121. This is a planning device that makes teachers commit to serving in a particular school for the coming school year so that schools can plan class assignments. Teachers are required to sign such contracts so that they don't try to jump from school district to school district during the course of a school year, leaving scores of kids without a teacher mid-year. BIA educators, like many teachers elsewhere, are precluded from seeking or accepting employment in another school once they make a commitment to a particular assignment through accepting a contract offer. "An educator who voluntarily terminates employment with the Bureau before the expiration of the existing employment contract . . . shall not be eligible to be employed in another education position in the Bureau during the remainder of the term of such contract." 25 U.S.C. § 2012(j).

Mr. Rippa and other BIA educators are eligible for and receive Federal employee health, retirement and life insurance benefits. (See Block 45 of Mr. Rippa's SF-50, exhibit A to this memorandum). Contract employees are not eligible for such benefits. *Horner v. Acosta*, 803 F.2d 687 (Fed. Cir. 1986). "It is well established that an appointment is necessary for a person to hold a government position and be entitled to its benefits." *id* at 692. A ruling that BIA educators are contractors and not employees will jeopardize the health, retirement and life insurance benefits that 5,000 BIA teachers receive. BIA educators also have collective bargaining rights under the Federal Labor-Management Relations Statute. *See e.g. Bureau of Indian Affairs, Isleta Elementary School, Pueblo of Isleta and Indian Educators Federation*, 54 FLRA 1428 (1998); *Indian*

*Educators Federation, New Mexico Federation of Teachers and U.S. Dep't of the Interior, Bureau of Indian Affairs, Albuquerque and Navajo Areas*, 53 FLRA 969 (1997); *U.S. Dep't of the Interior, Bureau of Indian Affairs, Gallup, NM and Indian Educators Federation, New Mexico Federation of Teachers*, 52 FLRA 1442 (1997). Only employees have collective bargaining rights. 5 U.S.C. §§ 7102, 7103(a)(2).

**c. Enforcement through the Contract Disputes Act would be futile because the terms of Mr. Rippa's contract conflict with the statutory provision which Mr. Rippa seeks to enforce in this case.**

All new BIA educators are required to sign a contract which contains this clause:

> During the probationary period, if the employee's performance or conduct is not satisfactory, this contract may be terminated unilaterally by management during the term of this contract.

See ¶ 6, Exhibit 1 attached to Defendant's Reply Brief. However, the statute governing the employment of BIA educators contains no language authorizing a "probationary period" and explicitly provides that "no educator" may be unilaterally terminated:

> [N]o educator may be discharged without notice of the reasons for the discharge and an opportunity for a hearing under procedures that comport with the requirement of due process. . .

25 U.S.C. § 2012(e). The definition of "educator" in both the statute and in Interior Department regulations includes Mr. Rippa and every other school employee regardless of length of service. 25 U.S.C. § 2012(o)(1),(2); 25 C.F.R. § 38.3.

Thus it would be pointless to require Mr. Rippa to enforce his contractual rights through the Contract Disputes Act when the contract he was forced to sign purportedly strips him of the statutory rights he seeks to enforce.

## Conclusion

The Court has Tucker Act jurisdiction over Mr. Rippa's claim and the Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

/s/

RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812 (202-274-1813 facsimile)
richard@hirnlaw.com

Attorney for Plaintiff

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| RIPPA, PAUL DAVID | 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 | 03/31/50 | 11/06/06 |

## FIRST ACTION

| 5-A. Code | 5-B. Nature Of Action |
|---|---|
| 171 | EXC APPT NTE 09-30-07 |
| **5-C. Code** | **5-D. Legal Authority** |
| ZLM | P.L. 95-561 |
| **5-E. Code** | **5-F. Legal Authority** |
| | |

## SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |
| **6-C Code** | **6-D. Legal Authority** |
| | |
| **6-E. Code** | **6-F. Legal Authority** |
| | |

**7. FROM: Position Title and Number**

**15. TO: Position Title and Number**
TEACHER (SCIENCE)
D34N21 0044870 5614487

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | | | |

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| CY | 1710 | 14 | 06 | $ 232.64 | PD |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| $ 232.64 | $ 0.00 | $ 232.64 | $ 0.00 |

**14. Name and Location of Position's Organization**

**22. Name and Location of Position's Organization**
BUREAU OF INDIAN AFFAIRS
DIRECTOR, OFC OF INDIAN ED PROGRAMS
DEPUTY DIRECTOR
EASTERN NAVAJO EDUC LINE OFFICE
WINGATE HIGH SCHOOL
FORT WINGATE, NEW MEXICO

## EMPLOYEE DATA

**23. Veterans Preference:** 2 (1 - None; 2 - 5-Point; 3 - 10-Point/Disability; 4 - 10-Point Compensable; 5 - 10-Point Other; 6 - 10-Point/Compensable/30%)

**24. Tenure:** 0 (0 - None; 1 - Permanent; 2 - Conditional; 3 - Indefinite)

**25. Agency Use:**

**26. Veterans Preference for RIF:** X YES ☐ NO

**27. FEGLI:** C0 BASIC ONLY

**28. Annuitant Indicator:** 9 NOT APPLICABLE

**29. Pay Rate Determinant:** 0

**30. Retirement Plan:** K FERS & FICA

**31. Service Comp. Date (Leave):** 07/03/05

**32. Work Schedule:** G FULL-TIME SEASONAL

**33. Part-Time Hours Per Biweekly Pay Period:**

## POSITION DATA

**34. Position Occupied:** 2 (1 - Competitive Service; 2 - Excepted Service; 3 - SES General; 4 - SES Career Reserved)

**35. FLSA Category:** E (E - Exempt; N - Nonexempt)

**36. Appropriation Code:**

**37. Bargaining Unit Status:** 0065

**38. Duty Station Code:** 35-0332-031

**39. Duty Station (City - County - State or Overseas Location):** FORT WINGATE, MCKINLEY, NEW MEXICO

| 40. Agency Data | | 41. VET-STAT | 42. EDUC LVL | 43. SUPV STAT | 44. POSITION SENSITIVITY |
|---|---|---|---|---|---|
| CLS | 00 | V | 17 | 8 | NONCRITICAL-SENSITI |

**45. Remarks**

APPOINTMENT AFFIDAVIT EXECUTED 11-06-06.
CREDITABLE MILITARY SERVICE: 01 YRS 04 MOS
PREVIOUS RETIREMENT COVERAGE: NEVER COVERED
REASON FOR TEMPORARY APPOINTMENT SCHOOL YEAR CONTRACT.
FROZEN SERVICE NONE
CONTRACT COVERS PERIOD 11-06-06 TO 05-27-07.
ELIGIBLE FOR FEGLI, RETIREMENT AND HEALTH BENEFITS.
APPOINTMENT IS SUBJECT TO PROBATIONARY PERIOD FOR EIGHTEEN CALENDAR MONTHS BEGINNING 11-06-06, WHICH MAY BE EXTENDED.
YOUR SCHOOL HAS 194 WORK-DAYS AND YOUR SALARY HAS BEEN MODIFIED TO BE $214.91 BASED ON 210 PAID-DAYS.
EMPLOYEE IS AUTOMATICALLY COVERED UNDER FERS.
EMPLOYEE COVERED UNDER P.L. 95-561.

**46. Employing Department or Agency:** IN - INDIAN AFFAIRS

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| IN06 | 1801 | 11/16/06 |

**50. Signature/Authentication and Title of Approving Official**
KATHLEEN HAYES
HUMAN RESOURCES OFFICER
062052970