# In the United States Court of Federal Claims

No.  07-250C
(Filed December 14, 2007)

| | |
|---|---|
| \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* | \* |
| | \* Civilian pay; probationary |
| **PAUL D. RIPPA,** | \* employee; motion to dismiss; |
| | \* RCFC 12(b)(1); Bureau of |
| Plaintiff, | \* Indian Affairs employment |
| | \* determination; money-mandating |
| v. | \* statute; 25 U.S.C. § 2012(e) |
| | \* (2000); 25 C.F.R. § 38.9(d) |
| **THE UNITED STATES,** | \* (2000); whether agency manual |
| | \* has force and effect of law; |
| Defendant. | \* transfer statute, 28 U.S.C. |
| | \* § 1631 (2000). |
| \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* | \* |

Richard J. Hirn, Washington, DC, for plaintiff.

Carrie A. Dunsmore, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").  Plaintiff's complaint, filed on April 24, 2007, alleges that the Bureau of Indian Affairs (the "BIA") discharged him from his position as a teacher at the Wingate High School, Ft. Wingate, NM, without notice and without an opportunity for a hearing to rebut the grounds supporting his discharge.  Plaintiff alleges that these actions violated the procedural protections to which he was entitled under 25 U.S.C. § 2012(e) (2000), and 25 C.F.R. § 38.9(d) (2007), and seeks damages equal to the salary, compensation, and benefits that he would have earned as a BIA educator following his discharge and additional relief, including reinstatement to his teaching position.  Argument is deemed unnecessary.

**FACTS**

The recitation of facts is gleaned from plaintiff's complaint and his legal briefs opposing defendant's motion to dismiss for lack of subject matter jurisdiction. On November 6, 2006, the BIA hired plaintiff as a science teacher in the Wingate High School. This position is an "educator" position within the meaning of 25 U.S.C. §§ 2012(n)(1)(A)(i) and (o). On March 13, 2007, the Acting Principal of Wingate High School issued plaintiff a memorandum notifying plaintiff that he would be discharged effective March 30, 2007. It states, in part: "This action is being taken due to inappropriate interaction with students in the classroom. This action is being taken during your probationary period . . . . and is therefore, neither grievable nor appealable." Compl. filed Apr. 24, 2007, ¶ 7 (alteration in original).

Plaintiff complains that these actions violated the procedural protections granted by 25 U.S.C. § 2012(e) and 25 C.F.R. § 38.9(d). Defendant responded by moving to dismiss the complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Defendant argues that subject matter jurisdiction over plaintiff's complaint is lacking, because the statutes and regulations cited in the complaint do not mandate the payment of money and do not provide for a private cause of action.

25 U.S.C. § 2012 expressly excludes BIA educators from the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (1978) (codified in scattered sections of Title 5 of the U.S. Code) (the "CSRA"). "Chapter 51, subchapter III of chapter 53, and chapter 63 of Title 5 [the CSRA], relating to leave, pay, and classification, and the sections relating to the appointment, promotion and removal of civil service employees, shall not apply to educators or to education positions." 25 U.S.C. § 2012(a)(1). Instead, the Secretary of Interior is directed to "prescribe regulations to carry out" the provisions of section 2012, which include "the discharge of educators." 25 U.S.C. § 2012(b)(5). The statute directs the Secretary to promulgate regulations providing "that no educator may be discharged without notice of the reasons therefor and opportunity for a hearing under procedures that comport with the requirements of due process." 25 U.S.C. § 2012(e)(1)(B). The Secretary of Interior prescribed these statutorily mandated conditions in 25 C.F.R. § 38.9. In the subsection titled "Procedures for discharge for cause," the Director of the Bureau of Indian Affairs is directed to "publish in 62 BIAM the procedural steps to be followed . . . in discharge for cause cases." 25 C.F.R. § 38.9(d). The regulation required that the procedures "provide (among other things) for the following: (1) The educator to be discharged shall receive a written notice of the proposal, specifying the causes or complaints upon which the proposal is based, not less than 30 calendar days before the discharge." Id.

The Bureau of Indian Affairs Manual (the "BIAM") contains a lengthy description of the scope and mechanisms of the Employee Grievance Policy pertaining to BIA educators. See 62 BIAM §§ 11.82-.90 (1996).  The BIAM also establishes a probationary period for new employees that it describes as "an extension of the examining or appointment process, during which a careful review is made of an employee's character and ability to satisfactorily perform the duties of the position."  62 BIAM § 11.25(A).  By the terms of the BIAM, "a probationary employee may be terminated at any time during the term of a contract. Termination is accomplished by providing written notice to the employee two weeks prior to the effective date of the termination."  Id.  As the memorandum issued to plaintiff by the Acting Principal of Wingate High School alluded, the BIAM establishes that "[t]ermination of a contract during the probationary period for any reason is not grievable or appealable." 62 BIAM § 11.25(H).  Plaintiff does not dispute that he was an employee within the "probationary period" set forth in 62 BIAM § 11.25, but argues that

> [t]he gravamen of this dispute is whether the BIA may establish a "probationary" period and deny such statutory due process to educators during their first few years of employment even though the statute does not mention "probationary" periods and clearly provides that *no* educator may be discharged without notice and an opportunity for a hearing.

Pl.'s Br. filed Aug. 10, 2007, at 2.

## DISCUSSION

1. Standard of review

Before a court may proceed to the merits of a case, jurisdiction must be established. PIN/NIP, Inc. v. Platte Chemical Co. 304 F.3d 1235, 1241 (Fed. Cir. 2002).  "It long has been established, of course, that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  United States v. Testan, 424 U.S. 392, 399 (1976) (alteration in original) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Thus, the United States Court of Federal Claims has no jurisdiction over a cause of action except to the extent that Congress has effected a waiver of sovereign immunity.  Id.

The court's jurisdiction is set forth primarily in the Tucker Act, codified as 28 U.S.C. § 1491 (2000).  It grants the court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28

U.S.C. § 1491(a)(1).  This grant of jurisdiction constitutes a waiver of sovereign immunity by the United States.  "[I]n a Court of Claims context, . . . a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'"  Testan, 424 U.S. at 399 (quoting United States v. King, 395 U.S. 1, 4 (1969)).  "In the Tucker Act, Congress waived the federal government's sovereign immunity but limited the jurisdiction of the Court of Federal Claims to hear claims 'against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort.'"  Bd. of Trs. of Bay Med. Ctr. v. Humana Military Healthcare Servs., 447 F.3d 1370, 1374-75 (Fed. Cir. 2006) (quoting Tucker Act, 28 U.S.C. § 1491(a)(1)).

However, the Tucker Act does not itself create a substantive cause of action against the United States.  Testan, 424 U.S. at 398.  Plaintiff therefore must identify another source of law that creates the substantive right and demonstrate that such source of law mandates compensation.  Mitchell, 463 U.S. at 216-17.  The other source of law must be "reasonably amenable to the reading that it mandates a right of recovery in damages."  Doe v. United States, 463 F.3d 1314, 1324 (Fed. Cir. 2006) (quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003)).  If the court determines that the source of law identified by plaintiff meets the money-mandating test, it will "declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course."  Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005).  On the other hand, "[i]f the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal–the absence of a money-mandating source being fatal to the court's jurisdiction."  Id.

Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."  Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (holding that "[i]f [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof").

### 2.  25 U.S.C. § 2012 and 25 C.F.R. § 38.9 as sources of jurisdiction

Plaintiff's complaint states that "[t]his Court has jurisdiction over this action pursuant to the Tucker Act . . . because the plaintiff's claim is founded on both an Act of Congress and a regulation of an executive department which are 'money mandating.'"  Compl. filed Apr. 24, 2007, ¶ 2.  As defendant argues, plaintiff does not identify specifically the statute and

regulation in the "Jurisdiction and Parties" section of his complaint, although a fair reading of the complaint shows that plaintiff predicates jurisdiction on 25 U.S.C. § 2012 and 25 C.F.R. § 38.9 as the statute and regulation that form the basis of his complaint. A statute is money-mandating if it creates a private cause of action for money damages on its face, or if it "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." Mitchell, 463 U.S. at 271 (quoting Testan, 424 U.S. at 400). A statute or regulation fairly can be interpreted as money mandating when it is "reasonably amenable to the reading" that it is money mandating. Doe, 463 F.3d at 1324.

In Volk v. Hobson, 866 F.2d 1398 (Fed. Cir. 1989), the United States Court of Appeals for the Federal Circuit addressed the predecessor statute to 25 U.S.C. § 2012, then codified as 25 U.S.C. § 2011. */ The Federal Circuit first held that the statute does not, on its face, provide for a private cause of action:

> Section 2011(e)(1)(B) [substantively identical to current section 2012(e)(1)(B)] provides: "In prescribing regulations to govern the discharge and conditions of employment of educators, the Secretary shall require . . . that no educator may be discharged without notice of the reasons therefor and opportunity for a hearing under procedures that comport with the requirements of due process." As can be seen, no private right of action to redress violations of the statute is expressly provided.

Id. at 1400-01 (quoting 25 U.S.C. § 2011(e)(1)(B) (1988)). The Federal Circuit then considered "whether Congress intended that there be a private right of action, that it is there by implication," and concluded "that Congress did not." Id. at 1401. The Federal Circuit noted that Congress had excluded BIA educators from the coverage of the provisions of the CSRA that relate to the appointment, promotion and removal of civil service employees. Instead, then-section 2011 (and current section 2012) directed the Secretary of Interior to prescribe regulations governing the appointment and discharge of educators. While the court recognized that subsection (e) of these statutes "tells the Secretary what regulations covering discharges of employees must contain" and that "to that extent . . . the teachers were intended to benefit," the court held that "no part of [the statute] enables one who perceives herself aggrieved to base a suit on the statute." Id.

---

*/ The relevant portions of this predecessor 25 U.S.C. § 2011 are substantively identical to the current 25 U.S.C. § 2012. Compare 25 U.S.C. § 2012 (2000), with 25 U.S.C. § 2011 (1988).

The Federal Circuit applied the holding of the United States Supreme Court in United States v. Fausto, 484 U.S. 439 (1988), that "in view of the integrated system created by the CSRA . . . to allow a remedy not otherwise provided for in the statutory scheme would upset the balance carefully wrought by Congress between 'the legitimate interests of the various categories of federal employees [and] the needs of sound and efficient administration.'" Volk, 866 F.2d at 1401 (quoting Fausto, 484 U.S. at 445) (alteration in original).  Drawing from the statute's specific exclusion of BIA educators from the CSRA and the Supreme Court's holding in Fausto, the Federal Circuit held that the same reasoning applies

> where Congress carefully excused the Secretary from complying with the cumbersome civil service rules that might otherwise govern educators, but required that a specified regime be implemented to govern discharge cases like this one.  Congress can be deemed to have intended that this be the only remedy available; the very existence of the remedy is evidence that it surely did not intend a private right to sue based on section 2011(e)(1)(B).

Id.

Plaintiff argues that Volk is no longer good law, having been overruled by statute when Congress amended 5 U.S.C. § 7121(a) (2000), a provision of the U.S. Code concerning the establishment of grievance procedures as part of a collective bargaining agreement. Plaintiff argues that the Federal Circuit's opinion in Mudge v. United States, 308 F.3d 1220 (Fed. Cir. 2002), so acknowledged.  Plaintiff's argument, however, misunderstands the Federal Circuit's holding in Volk and relies incorrectly on the amendments to 5 U.S.C. § 7121(a).  In Volk the Secretary of the Interior had established "procedures to govern discharges for cause" as required by then-section 2011.  Volk, 866 F.2d at 1401. Significantly, these procedures were "superseded by those set out in the collective bargaining agreement negotiated between the BIA and the [union] as permitted by 5 U.S.C. § 7121, and which apply to Volk."  Id.  Plaintiff notes that 5 U.S.C. § 7121(a) originally made the negotiated grievance procedures "the exclusive procedures for resolving grievances which fall within [their] coverage," 5 U.S.C. § 7121(a) (1994), and that amendments to 5 U.S.C. § 7121(a) changed this language such that the negotiated grievance procedures constitute "the exclusive *administrative* procedures for resolving grievances which fall within [their] coverage."  5 U.S.C. § 7121(a) (2000) (emphasis added).  Plaintiff argues that the 1994 amendment thereby "*reopened* this Court's doors to Tucker Act claims brought by unionized Federal employees who seek damages under 'money-mandating' statutes and regulations." Pl.'s Br. filed Sept. 24, 2007, at 3.

5 U.S.C. § 7121 was relevant in Volk only insofar as it allowed the BIA to craft alternate grievance procedures in its collective bargaining agreements with labor unions and

to allow these negotiated procedures to supersede any procedures that the Secretary of Interior adopted as required by former 25 U.S.C. § 2011.  No part of 5 U.S.C. § 7121 had any bearing on whether former 25 U.S.C. § 2011 or current 25 U.S.C. § 2012 were or are money-mandating statutes that give rise to private causes of action over which the Court of Federal Claims has jurisdiction.  Plaintiff's arguments based on the amendments to 5 U.S.C. § 7121(a) and the Federal Circuit's opinion in <u>Mudge</u> do not address the issue of whether 25 U.S.C. § 2012 is a money-mandating statute.  The Federal Circuit's holding in <u>Volk</u> is binding precedent and is unambiguous: 25 U.S.C. § 2012 is not a money-mandating statute. Therefore, the court cannot exercise jurisdiction over plaintiff's claims.

3.  <u>The non-grievability of termination of a contract during the probationary period<br>under the BIAM</u>

Plaintiff argues that the "gravamen of this dispute" is whether the BIA could establish a probationary period for BIA educators during which the statutorily and regulatorily mandated termination procedures that putatively apply to all BIA educators do not apply. Pl.'s Br. filed Aug. 10, 2007, at 2.  The BIA purported to do so in the BIAM.  The Federal Circuit has held that agency personnel manuals or handbooks can sometimes have the "force and effect of law," regardless of whether they were "published or promulgated under the standards set out in the APA," if

> (1) the promulgating agency was vested with the authority to create such a regulation; (2) the promulgating agency conformed to all procedural requirements, if any, in promulgating the regulation; (3) the promulgating agency intended the provision to establish a binding rule; and *(4) the provision does not contravene a statute*.

<u>Hamlet v. United States</u>, 63 F.3d 1097, 1105 (Fed. Cir. 1995) (emphasis added).  Section 2012(e) provides that "no educator may be discharged without notice of the reasons therefor and opportunity for a hearing under procedures that comport with the requirements of due process." 25 U.S.C. § 2012(e)(1)(B).  Section 11.25(H) of the BIAM, which establishes that "[t]ermination of a contract during the probationary period for any reason is not grievable or appealable," contravenes the plain language of 25 U.S.C. § 2012(e)(1)(B), and therefore does not qualify to be accorded "the force and effect of law."  <u>Hamlet</u>, 63 F.3d at 1105.

Insofar as plaintiff's complaint can be construed to assert a procedural violation of his due process rights guaranteed by the Fifth Amendment of the United States Constitution, the Court of Federal Claims does not have jurisdiction to entertain his claims.  "This court has no jurisdiction over claims based upon the Due Process and Equal Protection guarantees of the Fifth Amendment, because these constitutional provisions do not obligate the Federal

7

Government to pay money damages." <u>Carruth v. United States</u>, 627 F.2d 1068, 1081 (Ct. Cl. 1980); <u>see</u> <u>Inupiat Community of the Arctic Slope v. United States</u>, 680 F.2d 122, 132 (Ct. Cl. 1982).

    4.  <u>Procedural due process, and transfer of case to federal district court</u>

When the Court of Federal Claims "finds that there is a want of jurisdiction" over a civil action, it is directed by statute to,

> if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (2000). The Federal Circuit has held that the Court of Federal Claims should address whether transfer is proper when it finds a want of jurisdiction over the matter and a party has requested consideration of transfer. <u>See</u> <u>Texas Peanut Farmers v. United States</u>, 409 F.3d 1370, 1374-75 (Fed. Cir. 2005). However, the Federal Circuit has declined to comment on whether "a trial court must consider transfer as an alternative to dismissal for want of jurisdiction in cases in which transfer is authorized by section 1631, even in the absence of a request for transfer by the plaintiff." <u>Id.</u> at 1375 n.7. Plaintiff has not made any request, even as an alternative to denying defendant's motion to dismiss, that the court consider transferring this action to another court. Absent plaintiff's framing of a cause of action that could be evaluated against the standard of the transfer statute, this court declines to order transfer.

## CONCLUSION

Accordingly, based on the foregoing, the Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

s/ Christine O.C. Miller

_____

**Christine Odell Cook Miller**
Judge

8